May it please the court, I'd like to say three minutes for rebuttal please. Steven Bedrick on behalf of Jade Anderson. Shortly after the police officers told Jade Anderson that she was under arrest, she said, quote, I need a lawyer. She said it in a, quote, even voice. Officer Molitori, who was monitoring the recording, heard her say that. He told Officer Clark, who was doing the questioning, that Jade said, quote, I need a lawyer. Counsel, can I ask you a question about that? Did the officer who was monitoring first, how do you pronounce his name? Molitori. Molitori, thank you. Did Officer Molitori get up to go tell Officer Clark, or did Officer Clark, at one point in the record it sounds like Officer Clark was walking by in the hallway. I don't know the answer to your question, Your Honor. They were all sitting in close proximity to each other. The location where Officer Molitori was sitting was only a few feet away from the desk where the other officers were. I have another question about Officer Molitori. When I looked back at his, the transcript of his testimony, it doesn't look like he was asked the question of whether he understood that she was requesting counsel. You are correct, Your Honor. He was not asked about his understanding, but under a whole long line of cases, it is not the officer's understanding that matters. The question of whether a statement is a proper invocation is an objective one, and the officer's understanding does not apply in that test. Well, we have to figure out what a reasonable officer would have understood, right? Well, Molitori told, that's correct, Molitori heard that statement, and he told that to Clark. He did not tell Clark anything else. He thought that was of significance. That's why I asked counsel whether he got up to go tell Clark, or what you just said was that he thought it was of significance, and it sounds like he didn't feel compelled to go tell Clark. Do we know anything more about the exchange those two had? Not that I know off the top of my head, Your Honor. They were sitting within a few feet of each other, or the place where Molitori was sitting and the place where Officer Pickard and Officer Clark were within a few feet of each other. It's not a space of a courtroom like this. It's a little police station. Was there any – was Officer Molitori in any kind of a closed, separate room, or was it an open area between where they were? I believe there was a partition. I don't believe that there was – that the room was totally closed. Thank you. And if I can go on with Your Honor's question, Clark – Molitori told that to Clark. Clark's response – Clark claimed, of course, not to remember anything, but Clark's response then was to spend five minutes talking to a – talking to a appellant and telling her she had to talk to – it was important to talk to us. We think we can get a deal with the DA, but we can't get a deal unless you talk to us. You have to tell us the truth. We think you're hiding something. We have to tell us your truth. On and on and on for about five or six or seven minutes, an excerpt of Record Volume 2, pages 262 through 265, it is clear from Clark's questioning of – Jade wasn't questioning. It was – it was haranguing. It was clear from his haranguing at that point that he knew that she had requested a harangued her in that fashion for several more minutes before he finally got around to asking – to giving her Miranda warnings. I gather you would concede that some form of communication has to occur. In other words, if she said – I said I need a lawyer in a closed room and nobody heard her at all, that that was not a sufficient invocation of her rights, true? It depends. Your Honor, I believe the test should be – the – make a statement that is unambiguous on its face. And I think it's my position. I don't think it can be disputed. I need a lawyer. It's as unambiguous as any statement should be. The position taken by the State court was that effectively that the fact that the officer turned his back a moment before Jade made that statement turned an unambiguous statement into something that was not adequate. It is my – I believe the test should be a statement – the statement obviously has to be heard by the questioning officer at some point before he has a question. My question is that I – my question simply was, if it's not communicated at all, if it's said in a room by herself and nobody hears it, that's not a sufficient invocation. If no one hears it, that's not going to be adequate. But in this case, it was heard. It was heard twice. It was heard first by Mollett-Cherry, who's on the tape. And then secondly, it was heard when Mollett-Cherry told that to Clark. All right. What the State's rule was – I think I can paraphrase it – the State court said that the statement must be made in a manner likely to be heard by an officer known to her, and the statement must actually be heard by the officer. Two parts to that. The question is, is that an unreasonable construction of – or an unreasonable application of the Supreme Court rule? Very much so, Your Honor. The statement – the State court claimed it must be made in a manner that was, quote, likely to be heard by an officer. Likely is a probability. The odds – whether the odds are 51 – 60 percent or 51 percent or 49 percent doesn't matter, because in this case, it was heard by the officer. It was heard by Mollett-Cherry, and Mollett-Cherry then told Clark. The State court rule. The State court rule is likely to be heard by an officer known to her. She did not make the statement to Mollett-Cherry. I don't think she even knew he was there. She made the statement believing that Clark was going to hear her at the moment she – All right. All right. And that's what I asked. Yes. You said, is this an unreasonable application of the – of the Supreme Court rule? Must make a statement in a manner likely to be heard by an officer known to her. The officer known to her is brand-new law. There's no case supporting that anywhere. I didn't ask that. You know, I don't like it particularly, but that's the rule. That is an unreasonable application, not is there a case already that says what the State court says. Your Honor, I believe the line of authority that supports me is the line of authority of Arizona v. Roberson and Michigan v. Jackson, which says that if you make a statement invoking a Miranda right to one officer, that is – and one officer hears it, that is sufficient to cover all officers. So it sounds like you're really arguing that this was contrary to Davis because there was a clear invocation and contrary to Roberson because of the line of cases having to do with once you've invoked as to one officer, you've invoked as to the other. But which officer was it invoked to? It was – there were two or three officers who were at the – the defendant's in an interview room that's about 6 by 10. There are two officers – three officers standing outside the interview room. There's Clark, who's the primary questioner, and he's standing outside. He's taken one step and a step and a half in an interview room and then a step back to the desk and then a step back in an interview room and a step back to the desk. Officer Lemon is also there. And when the discussion is going on immediately before an appellant's statement, there's Officer Pickard, who is in the process of searching her purse. So there are three separate officers there with whom an appellant is having a conversation. They hear everything she says before she says, quote, I need a lawyer. And they hear everything that she says after she says, quote, I hear a lawyer. And coincidentally, that's what they don't happen to hear. But she is making that statement to those three people who were there. From where Officer Molitori was sitting, could he see the open door and the officers standing right in that area? Yes. He could see where Clark was, and I believe he testified that he could see the open door. So he could see them stepping in and out of the room as they spoke with her about her purse and needing to use the restroom? I believe so. But if he thought that they had heard it, why would he go and say, by the way, she just said this? He didn't know whether they heard it. Molitori's assignment was to monitor the recording equipment, take notes, and give any information to the questioning officers that he believed was important. And he did that. He told, that's why he didn't tell Clark that Jade was scratching her knee. He didn't tell Clark that Jade's eyes were watery. He told Clark two things. One of them was, quote, I need a lawyer. The interview went on for, I think, about 12 hours. Did he, on any other occasion, interrupt to tell, or whether interrupt or not, on any other occasion did he tell Clark anything she said or did? Not that I know of. The record does not establish whether or not that happened. What the record does establish over that 12 hours was that an appellant made several additional efforts to invoke Miranda rights, all of which are disputed, but she continued to make those efforts. She made the statement, I don't want, quote, I don't want to be here and talk to you guys. Please don't talk to me. That's the subject of the uncertified issue. I'm not going to address it on the merits. But that was a second attempt for her to exercise her right. About ten transcript pages later, she said, do I need a lawyer or something? That's not adequate under Davis, but that's still circumstantial evidence of what she's trying to do. And then the next day, when she was questioned by a DA, she invoked her Miranda rights twice. The DA ran over that. The DA then kept questioning her. That was eventually excluded. But as to that testimony, Officer Clark said, well, gee, I was here. I guess that went in one ear and out the other. That's what I believe happened here. Molitori told them Clark knew it. Under Arizona v. Robertson, the statement to one officer is sufficient. And this case is stronger than Arizona v. Robertson because in that case, the questioning officer did not know the indication, and here Clark knew of it. I was trying to find out from you whether you thought that the State interpretation or application of Davis was unreasonable. And now you seem to be saying, yes, it's unreasonable because it conflicts with the other cases you just mentioned. It's also unreasonable under Davis because Davis says, quoting Smith, a statement is either an invocation or it is not. And that's what happened here. This statement was an invocation. The State court admitted that on its face that was sufficient, but it claimed that somehow Clark's act of turning his back on the defendant just a moment before she made that statement was sufficient to turn an ambiguous statement to turn a clear statement into an ambiguous one. And that is the case. Well, you know, there are two different questions here. And one is whether the rule is an unreasonable application, and the other is a factual determination by the district court that the way she said the statement was in an equivocal tone, almost as if questioning herself, and it was not loud enough to be heard by the officers where they were. Your Honor, that was not the finding of the Federal district court. No. That was a statement made by the first trial judge. Yes. And as to that, the State court of appeal ruled in the last reason decision, which is what this Court needs to look at under Ilse V. Nunnemeyer, it ruled in the last reason decision that Jade made that statement in a, quote, even voice. And the district court then looked at that, and the district court concluded that the statement that she made it in a, quote, even voice is different and rejecting of the claim that she pondered, and then the Federal district court made the finding that she said it in a, quote, even voice. So there is no finding of pondering or inadequate voice tone to which this Court should defer. Well, here's what the State court of appeal said, is that the reference muttered under the defendant's breath is inherently equivocal and ambiguous. Pardon me, Your Honor. It says any statement made, not made in a manner likely to be heard by the police, such a reference to a lawyer that's muttered under the defendant's breath is inherently equivocal and ambiguous because it suggests the defendant has not yet decided actually to assert his or her rights. And it goes on to say we find substantial evidence to support the trial court's implicit factual finding that none of the defendants known to the defendant heard her statement. The joint ---- I mean, under APA review, you may disagree and we may disagree, but we have to accept that, don't we? But going back, going backward, the likely to be heard, let us say that that's merely goes to probability. That is an incorrect statement of law and an incorrect statement of fact because the officer did hear it. The fact that someone whispers should not be held by your Honor, if I were whispering to you like this and you heard me, that should not be held against me, even though someone else with less clear hearing might not have heard it. You heard it. Well, let's assume that there was no officer. It was clear that the door was closed, there was no officer in the room, and she's muttering to herself, I think I need a lawyer. It seems to me that's not enough under the case law. If the door ---- I agree, Your Honor. If the door is closed and she's muttering to herself, then we ---- then I lose. But neither of those facts was correct. The door was open. The officer, Clark, is going in and out and in and out, and she is heard by two separate people. She's heard directly by Molitary, and then he relays that to Clark, so he hears it indirectly under the Arizona v. Robertson language. It is the first statement covers everything, and he heard it. So what if ---- and forgive me, I'm not going to do this to you too many times with too many hypotheticals. But what if the door had been closed and she couldn't see anybody and she had no expectation that the guys outside heard her, but in fact Molitary heard her loud and clear? That would be a tougher case than I have, Your Honor. Is that Sessoms? Isn't that the footnote in Sessoms? Yes. But that is a comment in Sessoms. Sessoms never gets to that. Sessoms doesn't decide. Right. No, I appreciate that. Yes. But I'm just trying to figure out what your position is here. It goes to Judge Thomas's question. Is it a function of the ---- of sort of how she makes this statement and ---- because the California court of appeals thought so. They thought there was a question about whether it was reasonable for her to think that anybody was going to be on the receiving end. There's a running conversation. This is not the first word spoken by ---- they're talking for hours. But the running conversation changes at some point when folks turn their back on her and start having a conversation among themselves just to take the opposite view of this, and that's the view that was ---- that prevailed in front of the California court of appeals. I don't believe that's it, Your Honor. I apologize, but I don't believe that's a correct reading of the record. The record says that Clark was back and forth. He was in the room talking to Jade, and then he's back to the desk where the other officers were. And he's in and out and in and out. Right. And at the time she made this statement, I've watched the video and I appreciate it's your argument, but it's a terribly important case, so I want to get it right. And at the time that she made this statement, I think the record is that they had Clark in particular had his back turned to her because he was looking into her purse. If I've misunderstood that, I'd absolutely want you to correct me. That's correct. That's my understanding also, Your Honor. Okay. But his back wasn't turned on at her back. His back was not turned on. And I think we can agree that she would have turned on her three seconds before. Right. Your Honor, let us say that we're having a conversation, and you're in your chambers and I'm standing at the door, and the conversation is going on, and I say something, and just as I say something, you turn away and you don't hear it. He didn't just turn away. There was also an audible, although muted, but there's a conversation the officers in the hall then start to have among themselves. They're doing that all the way through this process. They're talking. He's in the room to talk to Jay, out of the room to talk to the other officers. So you think there's no difference, no change in the circumstance? That is correct. All right. That is correct. Now, what the State would like to do here is to isolate this moment in time, so you can't look before, you can't look afterward, you can't look that this is a continuing conversation. And that's contrary to what the recent panel held in Sessoms, is that everything has to be read together. We have to look at the entire process, not just the isolated one second. Well, what about the fact, then, that in response to her other statements, there was a response from the officers in the hallway? And in response to, after she made this statement, I need a lawyer, there was no response at all. Isn't that an indication that nobody heard her? That is circumstantial evidence that Clark did not hear her. Okay. But Molitorio clearly did hear her. If I can try another analogy, usually analogies come from the bench to counsel. Let me try another one. We've got a desk, and we've got two large police desks just outside the doorway, and we have two large male officers standing there like that, and we have the average-sized woman officer, Pickard, sitting there. And the two large officers are there. And Jade says, I need a lawyer. But at the moment that she says, I need a lawyer, the two large officers turn like that, and the statement is heard not by the fellow on the monitor in the tape, but by Officer Pickard, who's sitting there. She is someone within the State's claim that was, quote, not, quote, known to defend it. Well, you just told me that Anderson could see Pickard. She could see the three in the hall. Yes. She could see Molitorio. That's why I'm presenting this as a hypothetical. I'm not presenting this as fact. Well, you're losing it when you say that Pickard wasn't known to Anderson. I'm sorry, Your Honor. I guess my hypothetical fails. Well, I wasn't trying to talk you out of it. I'm just trying to understand it. Thank you. Okay. Thank you very much. Good morning. Craig Riott for Respondent. The issue before the State court was what would a reasonable officer think if he saw this. Anderson is sitting in a room alone. The door is closed all but one foot. The only person she may be able to see has her back to her. She is unaware she is going to see Pickard. She is being recorded. She is unaware anyone can hear her. And by the way, there's a statement that she believed that she could be heard. This evidence was all uncontroverted. Ms. Anderson never testified, never gave a declaration as to what she thought about what was going on during this interrogation on the Miranda issue. You just touched on something that I don't understand from the record. Because the record seems to tell me that Anderson could see the three folks in the hallway and also that the door was open one foot. And that Clark was stepping in and out. Did the door change? Did he move the door? That I don't know. You see him come in and out. There was testimony that the door was, and I don't remember if it was Clark or Pickard who said the door was ajar about one foot. And by the way, Lemon, the other officer who was there during the interrogation, was not present. And I don't think that's disputed. So the only two people outside are Pickard sitting at her desk and Clark, who is talking to her. Do we know anything more about what prompted Clark, what Clark said? Forgive me, Molitary. What prompted Molitary? Exactly what Molitary said to Clark? Anything more than what I just reviewed with opposing counsel? There was testimony, and I don't recall whether it was Molitary or Clark who said that the discussion happened in the hallway as they were passing. I do not recall which one said that. Is that the remark that he said went in one ear and out the other? That was other testimony. That was not during that conversation. Clark did not recall being told that. Molitary said he told Clark. Doesn't that seem strange to you, that if one police officer told another she said she wants a lawyer, that he wouldn't recall that? I beg your pardon? That he wouldn't recall that? Yes. I don't know what to make of that, whether it's just a failure of recollection. It could be a failure of recollection on Molitary's part as well. You mean you think Molitary, when he told him that she said she needs a lawyer, what recollection failed Molitary? Well, he has it in his notes. I don't know, Your Honor. I'm just saying either one could have misrecollected. He has it in his notes, so if he's testifying at the hearing and he looks at his notes, he may have. So he lied under oath, you're suggesting? You're not suggesting he lied under oath? No, no. So we accept his version. Yes. And we accept Clark's version that he doesn't recall as well. Counsel, do we know anything more about what Molitary's procedure he was following, what his marching orders were, about what he's supposed to write down and when he's supposed to tell Clark something? We do. Where is that? It's in his testimony. He testifies that his job was to do a couple of things. One is to change out the tapes. By the way, he's in a closet. It's very clear. He's in a closet. This is, I don't know if he had a two-way or one-way mirror or what have you, but she doesn't know he's there, and she can't see him. He said his job was to switch out the tapes when they came to an end and to take notes, particularly of anything that happened when they weren't there. When they weren't there, he wrote down two quotes. One was, I need a lawyer, and the other had something to do with, I'm going to do 25 to life or something like that. He tells Officer Clark both of those things. My opponent tries to read a lot into that, and I don't know if we can read anything more into it than he told him that because he didn't hear it. He was ---- But surely there were other breaks over the course of a 12-hour, I think it's about a 12-hour interrogation. Yes. And did Molitary tell Clark anything else on any of the other breaks? That I don't know. Your Honor, I confess I didn't read the entire transcript beyond this issue, so I don't know if there ---- And I don't think Officer Molitary was asked about that as well. I didn't see it. Because the discussion at the Miranda hearing focused on the I need a lawyer statement. And by the way, there's a discussion in Davis about what might be good police practice if there's an ambiguous invocation, or not an invocation but an ambiguous statement. They said it's good, it may be good police practice for an officer to follow up. That may have been what Clark was doing. Maybe he thought he was following up. He thought it was an ambiguous. But the Supreme Court expressly states in Davis that we decline to adopt a rule requiring that. It's either an invocation or it isn't. If it isn't, it could be ambiguous. It could be she may want an attorney. But that's not sufficient. So the State doesn't get to Roberson. In other words, you're not concerned about opposing counsel's argument that if she invoked to one, she invoked to others, because your position is she didn't invoke. That's correct. There is another aspect of Roberson, though, that is relevant, and that's that we're focusing on the it's an objective inquiry, but it focuses on the subjective intent of the person being interrogated. So what would, let's say Molitori, he's there, he hears it. What would he think? He sees that she's alone. He sees that she doesn't know he's there. He sees there's no one else in the room. And she says this. And as the State court found, it's like she's daydreaming or pondering, even in the manner in which she says, I need a lawyer, is more of a question than a statement. She didn't raise her voice. A reasonable officer, let's take, or Molitori's subjective belief, he doesn't think she's invoking. At least the State court could reasonably find that someone in Molitori's position wouldn't think she's invoking. And, you know, I don't know where you're getting the reasonable officer analysis. I beg your pardon? You know, you keep retreating to what would a reasonable officer do. I mean, the test first is, is the statement equivocal or unequivocal? And I don't think there's any debate about that. The statement is asserted. I need a lawyer. The only question was, was it communicated? And I don't think there's a reasonable officer overlay on that. It's a question of fact, isn't it? If it's communicated to an officer who's at the table, it's an invocation. That's true. I mean, the State court seemed to say, look, nobody heard it, and she didn't communicate it in a manner that was intended to communicate to an officer. And that's the end of that. That's what the State court said. I don't, I'm not quite sure I'm following your argument on the reasonable officer, what he would have done. The test is, in fact, whether a reasonable officer would believe it's an invocation under all the circumstances. So I think we're talking about the same thing. As the State court. Right. But in this case, everybody says it's unequivocal. It's just a question of somebody heard it, right? There's no way to misread that, her statement. Is there? I need a lawyer is what she said. As the State court says, if she says that to a lawyer, to a lawyer, I'm sorry, to an officer who's interviewing her, that's unequivocal. Right. As the State court also said, a statement that is not made to anyone is inherently unequivocal. So I don't know if they're mutually exclusive questions. She, and so that's where, if I'm talking about it being equivocal, that's where that comes from. It's inherently unequivocal. We can put that aside and say, no, she just simply didn't say it to anyone. I still say that that fails under the Davis test of whether an officer, considering all the circumstances, would find that equivocal. Now, in response to Judge Thomas's question, I'm not sure if what your position is, is that there was a finding of fact that it wasn't heard? Yes, there was a finding of fact that it wasn't heard by anyone. Is that your position as opposed to whether not a reasonable officer would have understood? They're not mutually exclusive. The fact that no officer heard is, it simply corroborates the fact that it wasn't made to anyone. Well, except a reason, Officer Molitari did hear. That's opposing counsel's point. Yes. It would be different if the door had been closed. We went through that hypothetical. If the door had been closed, that's a different story. But in this case, we know that Officer Molitari did hear it. So what do we do with that? Because it's an inherently unambiguous statement, I think you'd agree. But it wasn't made to anyone. And in the context of it. Yes, but if Molitari thought that she was trying to communicate to one of the officers in the room and they just didn't hear it for one reason or another, then a reasonable officer in his shoes would say she's invoked a right to counsel to the officer if he thought that she was trying to communicate to the officer. True? No, because it's still an objective. It's still an objective test. If he's a reasonable officer. Well, that's what I'm doing. He's looking at her. And if he believes that she's trying to communicate to that officer, then I think under the reasonable test that you want me to examine, then I think probably it's an invocation. No, I'm not sure that the records, he says that in the record, but I'm just, so I'm granting you that's a hypothetical. But if he really believes she's trying to invoke at the time and communicate to the officer and he heard it, then I think you're stuck on that. If the circumstances support it, yes. Right. And, Judge Christin, your point about the factual findings, I would like to say something. There's been a lot of discussion about what the two different court of appeal opinions, by the way. Right. The second court of appeal opinion did not supersede the first. They say in a couple of different occasions in that opinion that, well, first of all, the chief point of the second opinion was that there wasn't sufficient additional evidence on remand to override the first opinion or the trial judge's factual findings underlying the first opinion. That first opinion was incorporated into the second, as were the trial judge's factual findings. And the first opinion of the court of appeals says that they think that the trial court impliedly found that nobody heard her. That's correct. There were factual findings that no one heard her, that she didn't raise her voice. It's like she's daydreaming or pondering. That's actually the trial court, but that's mentioned in the first court of appeal opinion. So when they say no one heard her, of course, they have to be excluding monetary, because that was uncontested. That's correct. I'm actually – I say no one heard her. They did it by name. Right. Neither Clark nor Pickard heard her. And by the way, speaking of that, Clark's back was to her. There's – the testimony in terms of the distance is not consistent, and I don't think it would be. These are folks trying to recall the layout of their office space. So there's 15 to 20 feet, 10 to 15 feet. And it wasn't simply three seconds between I need a lawyer and a discussion. There was a minimum of seven seconds, and that is stated in the record by the trial court or the court of appeal. And it's also critical that when Officer Clark wanted to talk to her and when they didn't speak, they didn't speak through the closed door, the door that was ajar. He came in when he wanted to talk to her. But there are responses she makes on the video where I can't see him in the room. He offers her something out of her person. She says that's fine, and they're clearly communicating, but I can't see him at that point in the video. So he didn't step all the way in or the camera angle is such that – No, you're right, Your Honor. He didn't – whether he stepped in, actually, I don't know. It's hard to tell. Yeah. I appreciate your candor. It's hard to decipher. There are instances when he's in front of the camera in instances, or at least one, where he's not. And he had his back turned to her because he was looking through her purse and was trying to sort of block that for some reason. Well, Officer Pickard was there to search the purse. She was searching it. She came in because she was a female, and obviously Ms. Anderson needed to go to the restroom. Right. So he is outside, and he's blocking her from seeing the search. Blocking Anderson from seeing the search. Of the purse. Of the purse. Yeah. Okay. If the Court has no further questions, I would submit it. Thank you, counsel. Thank you, Your Honor. If I may have a few more moments, Your Honors. To Justice Christian's question, did Molitary say anything else to Clark over the course of this discussion? The record does not establish that he said anything further. That, to me, points out the significance of the fact that Molitary thought that statement would, and no others, that statement was so important that he should tell that to Clark, even though there was nothing else in the entire 12 hours of questioning that he thought was important enough to tell to Clark. And Clark, as I believe I tried to argue earlier, Clark understood. And then after Molitary was then asked, did Officer Clark ask to look at the video to see if she said that, Molitary said no. She was not. He did not ask to look at the video. And then Let me ask you, are you making an independent argument that if she made the statement and she didn't make it directed in a way that was directed at Clark, but she made the statement, Molitary heard it, went to Clark and told him she has made a statement that she wants a lawyer, that that's based on that communication, she's entitled to a lawyer? I'm sorry, Your Honor, I don't quite understand the question. I apologize. Well, the question is if she didn't comply with the State application rule, that it must be in a manner likely to be heard by an officer known to her, but an officer unknown to her heard her make it and communicated it to the people conducting the interrogation, that is a sufficient indication. Yes, Your Honor. That is my position. And it's my position. That's not my only position, but that's my position. And that's my position because Clark heard the statement. He heard it indirectly. And Clark's position, my client, that's why I keep referring the Court to Robertson, because at Robertson, the questioning officers never heard the invocation, yet that was found to bind them. Here, Clark ---- And do you think that that position is supported by a clearly established Supreme Court rule? I believe it's clearly established Supreme Court law that if you make a statement, I need a lawyer that officer number one hears, and then he tells it to officer number two, that that is sufficient under Arizona v. Robertson, under Edwards, and so on. Robertson, they didn't ---- officer number one didn't tell officer number two. That's correct. So that you need to have procedures in place so that that invocation is recorded. Is that a fair understanding? Yes. Yes, Your Honor. All right. So that's why, like, the officers here had more warning. The Robertson ---- the Supreme Court ruled in favor of Robertson even though the officer doing the questioning had no idea that she had invoked. In this case, the officer doing the questioning knew she invoked because he was told indirectly. So from the point of view of the officer, the officer in Robertson was in a stronger position of what's a poor cop supposed to do than the ---- than Officer Clark here. The officer in Robertson could have said, how am I supposed to know that she invoked to someone else? No one told me. And the courts ---- the Supreme Court said that doesn't matter as long as an officer hears her. Here, Clark can't hide behind that because he was told by military and then he didn't ask to double check and look at the tape. He didn't do anything. He just went ahead and then proceeded for five or six or seven minutes to ---- instead of reading ---- instead of reading appellate her Miranda rights, which is what Sessoms said should have been done at this point. Clark went ahead and then harangued and badgered appellate for several more minutes telling her that she needed to tell the truth. He could make a deal with the DA. He could ---- she was hiding something. She needed to come true and he ---- and maybe he could make a deal with the DA. On and on and on. I apologize for repeating myself, but that is what Clark did. He kept going on and on and on. He would not have made those statements unless ---- We're all over now. Okay. Might finish the sentence. He would not have made those statements unless he realized that appellate had requested a lawyer. Thank you. Thank you, counsel. The case is adjourned. It will be submitted.
judges: Reinhardt, Thomas, Christen